**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF MARYLAND**

**(Northern Division)**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No. CCB-19-0342 |
| | : | |
| JEFFREY CUMMINGS | : | |

_____

<u>**CONSOLIDATED REPLY IN SUPPORT OF**</u>
<u>**DEFENDANT'S PRETRIAL MOTIONS TO SUPPRESS EVIDENCE**</u>

Jeffrey Cummings, through counsel, James Wyda, Federal Public Defender, and Laura Ginsberg Abelson and David Walsh-Little, Assistant Federal Public Defenders, hereby submits this consolidated reply in support of his motions to suppress tangible and derivative evidence and statements. In support thereof, he states the following:

**Introduction**

Mr. Cummings was arrested and charged with the crimes in the initial, and now the superseding indictment, based on evidence that the government obtained unlawfully, through warrants that lacked probable cause or were the fruits of other unlawfully obtained warrants. Upon his arrest, he was given misleading information about his ability to obtain a lawyer, and then made incriminating statements.

The central argument raised in Mr. Cummings' motion to suppress tangible and derivative evidence is that the warrants issued on April 12, 2019,[1] were unsupported by probable

_____

[1] The affidavit in support of the April 12, 2019 warrants was attached to Mr. Cummings' initial motion, ECF No. 31, as Exhibit C. and to the government's response, ECF No. 38-39, as Ex. 1.

1

cause because there was no nexus between the communications related to the buying and selling of socks and any illegal activity. In its response to Mr. Cummings' motions, the government provides no response to this argument. They restate the information in the affidavit supporting the April 12 warrant applications ("April Affidavit"), but do not even attempt to argue that the April Affidavit provides any connection between 1) the Olivia Harris Facebook account and Mr. Cummings, 2) the Olivia Harris account and any other account to be searched, or 3) any account other than the Olivia Harris account and any crime. That, on its face, is an admission that the information in the application is insufficient to support the original warrants. Because the subsequent warrants were all based only on information gleaned from the original set of warrants, the evidence from those warrants should also be suppressed.[2] Further, because Mr. Cummings did not knowingly and voluntarily waive his *Miranda* rights, his statements should also be suppressed.

I.    **The Court should suppress evidence obtained as a result of the April 12, 2019, search warrants, which were unsupported by probable cause, based on stale information, overbroad, and executed without good faith.**

    a.    **Evidence that Mr. Cummings corresponded with minors relating to the sale and purchase of socks does not create probable cause to search the electronic accounts or packages associated with those communications.**

Probable cause for a search warrant "exists where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found in a particular place." *United States v. Doyle*, 650 F.3d 460, 471 (4th Cir. 2011) (quoting *Ornelas v. United States,* 517 U.S. 690, 696 (1996)). To establish probable cause,

---

[2] The third warrant affidavit, attached to the government's Response as Exhibit 6, had not previously been produced to defense counsel prior to that filing. Because that application also relied heavily on information obtained through the searches resulting from the warrants obtained based on the first and second affidavits, any evidence obtained as a result of that third affidavit is also the fruit of the earlier unlawful searches.

law enforcement must identify particularized information about why they suspect evidence of a specific crime will be found in a specific place in a warrant application. For example, in *Doyle*, the Fourth Circuit held that evidence of child sex abuse, even where the victim reported that the suspect had showed him pictures of nude children, was not enough to support the search of the suspect's home for evidence of child pornography crimes. *See* 650 F.3d at 472. In *Doyle*, the warrant application was devoid of any reference to whether or not the images had been shown in the defendant's home or when they had been shown to the victim, and the court held that without such details, there was no probable cause to search the defendant's home for child pornography. *Id.* at 474; *see also United States v. Haas*, No. 3:16CR139, 2017 WL 1712521, at *8–9 (E.D. Va. May 2, 2017) (No probable cause existed to search defendant's work laptop where there was no connection drawn between generally viewing child pornography and individuals' propensity to view or maintain it on a work computer); *United States v. Lipscomb*, 386 F. Supp. 3d 680, 687 (E.D. Va. 2019) (no probable cause to search defendant's electronic accounts where, despite communications with undercover agent, there were no facts suggesting a particular user was a collector of child pornography, or was not a teenaged girl).

   As in *Doyle*, the April Affidavit is devoid of any connection between the activity they find suspicious and the crimes they were purportedly investigating, Transfer of Obscene Material to Minors and Coercion and Enticement,[3] and the places to be searched. Response at 16.  The government seems to assume, and the warrant application implies, that any contact with minors, even non-sexual contact, would suggest evidence of criminal activity for someone who was previously convicted of a sex offense like Mr. Cummings. However, "logical inferences, without

---

[3] These are the only two offenses listed in the affidavit submitted in support of the first set of search warrants. April Aff. ¶ 65.

more, cannot support a finding of probable cause as a matter of law." *United States v. Church*,

No. 3:16CR92, 2016 WL 6123235, at *3-4 (E.D. Va. Oct. 18, 2016) (ruling that there was no

probable cause for a search where the warrant application did not explicitly connect evidence of

other sex crimes to a likelihood they would find evidence of child pornography) (citing *Ybarra v.*

*Illinois*, 444 U.S. 85, 91 (1979); *Doyle*, 650 F.3d at 472.

Though the April Affidavit does include evidence of "the various exchanges of

communications and packages with numerous minor boys," response at 15, it does not

"include[e] the exchange of sexually explicit images and videos" with numerous minor boys, as

the government implies. The receipt of potentially unlawful images was limited to the Olivia

Harris account, to which the government did not connect Mr. Cummings in the April Affidavit.

There is no evidence that the Olivia Harris Facebook account was connected to Mr. Cummings.

There is also no probable cause to believe that the Olivia Harris account was being operated by

anyone other than a teenaged girl. *See United States v. Lipscomb*, 386 F. Supp. 3d 680, 687 (E.D.

Va. 2019).

The government does provide some evidence connecting Mr. Cummings to the various

accounts used to communicate about socks, but those communications are not "incriminating,"

response at 16. Even assuming Mr. Cummings did communicate with minors concerning the

purchase of socks, there is nothing unlawful about those contacts.

Evidence of contacts between the various accounts does not overcome the deficits in

probable cause to believe that Mr. Cummings committed the enumerated crimes. For example,

the Richard Web account reflects that Olivia Harris and Richard Web knew each other or were

corresponding on Facebook, but there is no evidence that the Richard Web account ever asked

any minor for sexually explicit images, enticed any boy to commit any sex offense, or was an

alias for Olivia Harris. *Id* at 5-6. It also is clear from the warrant application that law enforcement had access to at least "Boy 3's" Facebook account and apparently did not find any evidence of production of child pornography or enticement – had they found any such evidence, it would certainly have been included in the application. Likewise, the Ryan Mi, Richard West, and cleveland80872018 Facebook accounts, and all of the email accounts searched pursuant to the first search warrant application, were searched based on connections to sock-related communications, but not based on sexual communications. Resp. 6-8; April Aff. ¶¶ 55-57, 62-64.

Finally, the search warrant affidavits in this case include several single-spaced pages of generalized training and experience information related to sex offenses and not even a single paragraph related to any connection between non-sexual contact with minors and the crimes they were investigating. April Aff. ¶ 6-7.

> **b. Evidence that Mr. Cummings was suspected of child pornography offenses in 2017 was stale by the time the government applied for the warrants at issue in this case.**

The government relies on the fact that Mr. Cummings was investigated in 2017 for allegedly having sexually explicit conversations with minors, but glosses over the fact that the Baltimore County Police investigated those allegations and even obtained a search warrant for the Ryan Miller account at issue here, and did not charge Mr. Cummings with a crime. April Aff. ¶ 24; Resp. at 15. Simply continuing to suspect that someone is committing a crime does not create probable cause.[4]

---

[4] Indeed, the government's description of what happened in 2017 shifts throughout its documents. The affidavit states "The detective located numerous sexually explicit chat sessions and photos of male subjects; however, the age of the participants in these chats and photos could not be determined." April Aff. ¶ 24. The government's response brief incorrectly states that Mr.

Further, a valid search warrant may issue only upon allegations of 'facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time.'" *United States v. McCall*, 740 F.2d 1331, 1335–36 (4th Cir. 1984) (quoting *Sgro v. United States*, 287 U.S. 206, 210, 53 S.Ct. 138, 77 L.Ed. 260 (1932)). Though the Fourth Circuit has held that there is sometimes more flexibility in the timing of seeking a warrant in a child pornography investigation, *see United States v. Bosyk*, 933 F.3d 319, 330 (4th Cir. 2019), here the Baltimore County Police investigated the allegations in 2017 and even obtained a search warrant for the accounts in question, and concluded they *did not* have probable cause to charge Mr. Cummings with a crime. They cannot then use their earlier unfounded suspicions as probable cause for a search warrant more than two years later.

### c. Mr. Cummings' status on the sex offender registry does not give law enforcement probable cause to search his electronic accounts or other property without evidence that he committed a crime.

An individual's status as a sex offender is not dispositive in a determination of whether there is probable cause to believe he committed a new crime. *United States v. Wagers*, 452 F.3d 534, 541 (6th Cir. 2006).  In this case, the facts the government was investigating were materially different from the facts of Mr. Cummings' prior conviction. That crime involved a known person, not a stranger. That crime did not involve the internet, or the purchase or sale of socks. And most importantly, it occurred over twelve years prior to the search warrant application. April Aff. ¶ 18.

The government uses Mr. Cummings' prior sex offense conviction and status on the sex offender registry to color the sock-related communications, despite the fact that these

---

Cummings "was seen exchanging sexual Facebook messages and photos with juvenile males at the Towson library in 2017." Resp. at 7.

communications are not nefarious and are not similar to the conduct underlying Mr. Cummings'
prior conviction. Without any information connecting his past with the current actions, Mr.
Cummings' prior conviction and status on the sex offender registry does not establish probable
cause to search accounts associated with him.

>    d.  **The Facebook warrants are overbroad and violated the particularity**
>        **requirement of the Fourth Amendment.**

In the internet age, courts have begun to recognize that the framework by which we allow
searches of people's homes, offices, and cars, does not translate directly to searches of email
accounts, social media accounts, and smart phones. The Supreme Court has long applied the
particularity requirement of the Fourth Amendment to ensure that searches are as limited as
possible and to prevent "exploratory rummaging" through a person's belongings. *Coolidge v.*
*New Hampshire*, 403 U.S. 443, 467 (1971).

Few courts have carefully examined these concepts as they apply to electronic accounts,
but the Eleventh Circuit's analysis in *United States v. Blake* is one such an analysis. Though the
Eleventh Circuit declined to suppress the Facebook evidence seized in *Blake*, the case is
instructive. Though the court decided, under the good faith rule, that it need not reach the
particularity question, it made clear that the particularity requirement of the Fourth Amendment
applies to warrants for social media accounts, and that searches of such accounts pose significant
risks to individuals' privacy rights. *Id.* The court explained, factually, that a warrant that allowed
for the search of "virtually every kind of data that could be found in a social media account" was
possibly unnecessary and overbroad. *Id.*

In this case, the warrants were similarly broad to the ones that troubled the Eleventh
Circuit in *Blake.* The Facebook warrants included four-page, single-spaces lists of every piece of
information associated with a Facebook account. The government took no efforts to limit the

search to those aspects of the Facebook accounts that might reasonably yield information related to their investigation.

In addition, the government failed to explain why evidence might be found in the many Facebook "locations" they sought to search. Such explanations are not generally required for the search of a house or a car—it is common knowledge that papers might be found in a drawer, a hard-drive in a desk, or a firearm in a closet or cabinet. But, the particular spaces and types of evidence sought related to social media accounts are not general knowledge. To allow warrants to be issued with no such scrutiny invites improper "exploratory rummaging" through a person's private, digital space. *See, generally, Coolidge,* 403 U.S. at 467; *Carpenter v. United States*, 138 S. Ct. 2206, 2223 (2018) ("[T]he Court is obligated—as subtler and more far-reaching means of invading privacy have become available to the Government—to ensure that the progress of science does not erode Fourth Amendment protections."); *Riley v. California*, 573 U.S. 373, 386 (2014)("A search of the information on a cell phone bears little resemblance to the type of brief physical search considered in [earlier cases]").

      **e.  The law enforcement officers who executed the warrants at issue did not do so in good faith because the warrants were based on "reckless falsity" and the April Affidavit was so lacking in indicia of probable cause that reliance on it was unreasonable.**

Law enforcement did not rely on the warrants issued in this case in good faith because the warrant applications omitted relevant dates and did not reflect evidence of the elements of the crimes they were investigating. The Fourth Circuit has recognized that there are four exceptions to the "good faith" rule set forth in *United States v. Leon*, 104 S. Ct. 3405 (1984):

    (1) when the affiant based his application on knowing or reckless falsity;
    (2) when the judicial officer wholly abandoned his role as a neutral and detached decision maker and served merely as a "rubber stamp" for the police;
    (3) when the affidavit supporting the warrant was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and

(4) when the warrant was so facially deficient that the executing officers could not
reasonably have presumed that the warrant was valid.

*Doyle*, 650 F.3d at 467 (4th Cir. 2011) (quoting *United States v. DeQuasie*, 373 F.3d 509, 519–
20 (4th Cir. 2004)). "Although the court considers only the information set forth in the sworn
affidavit when reviewing a magistrate's probable cause determination, in determining whether a
warrant application is so lacking in indicia of probable cause that the executing officers cannot
reasonably believe there is probable cause for the search, the court may look beyond the four
corners of the affidavit, and consider facts well known to the investigating officer but omitted
from the affidavit presented to the magistrate." *Church*, 016 WL 6123235, at *6–7 (quoting
*United States v. Thomas*, 908 F.3d 68, 73 (4th Cir. 2018)).

The law enforcement officers who executed the initial warrants in this case did not rely
on them in good faith for both the first and third reasons outlined in *Doyle*. First, the initial
search warrant application misrepresents Mr. Cummings' legal status at the time the application
was made. The application erroneously states that Mr. Cummings was on probation at the time of
the application – he was not. His probation expired on January 15, 2019,[5] and the search warrant
application was submitted to the Court on April 12, 2019. The affiant apparently had access to
those probation records, which makes this representation a "reckless falsity." Without the
implication that Mr. Cummings had violated his probation, the warrant application was "so
lacking in indicia of probable cause that the agents [could not] reasonably believe there [was]
probable cause for the search."

Moreover, law enforcement officers do not act in good faith when they ignore the fact
that an affidavit does not make out the elements of the crimes it purports to investigate. The

---

[5] *See* Probation/Supervision Order, Baltimore County Circuit Court Case No. 03-K-09-2144,
dated March 13, 2017, attached as Ex. A.

Supreme Court and the Fourth Circuit have held that a "reasonably competent public official should know the law governing his conduct." *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982); *see also Doyle* 650 F.3d at 473 ("[P]olice officers generally have a duty to know the basic elements of the laws they enforce.") (rejecting the argument "that the legal distinction between mere nudity and child pornography is not something that a reasonable law enforcement officer in Virginia should have known"); *Church*, 2016 WL 6123235, at *6–7.

In this case, the April Affidavit specifically states that it is investigating the transfer of obscene materials to minors and coercion and enticement. The elements of the transfer of obscene materials to minors, under 18 U.S.C. §1470, include that the defendant 1) use the mail or any facility of means of interstate commerce to 2) knowingly transfer obscene matter 3) to an individual who has not attained the age of 16 years. Coercion and enticement, under 18 U.S.C. § 2422, requires evidence that the defendant 1) use the mail or any facility or means of interstate commerce to 2) knowingly persuade, induce, entice, or coerce 3) any individual who has not attained the age of 18 years 4) to engage in any sexual activity for which any person can be charged with a criminal offense, 5) or attempt to do so.

As to the accounts other than the Olivia Harris account, there is no evidence whatsoever that Mr. Cummings or anyone else "persuaded, induced, enticed, or coerced" any individual to engage in any unlawful sexual activity.

There is a passing reference to the Richard Web account having sent a nude picture of an adult penis to a minor, ¶ 30, but there is no evidence that Richard Web knew the recipient was a minor or intentionally sent him the picture, even though agents had access to Boy 3's Facebook account and all communications with Richard Web. ¶¶ 28-31. Further, there is no description of

the image from which a reasonable officer could determine if it even meets the legal definition of "obscenity." *See Doyle*, 650 F.3d at 473; *Lipscomb*, 386 F. Supp. 3d at 686.

No reasonable law enforcement officer would have believed that this affidavit supported the searches of the listed accounts for evidence of the listed crimes.

## II.     The post-arrest statements made by Mr. Cummings were obtained pursuant to an involuntary waiver of Mr. Cummings' *Miranda* rights.

For a confession or a *Miranda* waiver to be considered involuntary, there must be coercive police activity. *See United States v. Giddins*, 858 F.3d 870, 881 (4th Cir. 2017) (citing *United States v. Cristobal*, 293 F.3d 134, 140–141 (4th Cir. 2002)). Though "the mere existence of threats, violence, implied promises, improper influence, or other coercive police activity . . . does not automatically render a confession involuntary," such activity is relevant to "whether the defendant's will has been overborne or his capacity for self-determination is critically impaired." *See United States v. Braxton*, 112 F.3d 777, 780–81 (4th Cir. 1997) (en banc) (internal quotation marks and citations omitted). The Government bears the burden of proving by a preponderance of the evidence that the statement was voluntary. *Id.* at 781 (citing *Lego v. Twomey*, 404 U.S. 477, 489 (1972)).

Courts, including the Fourth Circuit have held that when law enforcement officers make affirmative misrepresentations during interrogations, the resulting statements can be considered involuntary. *See Giddins*, 858 F.3d at 883–84 (collecting cases involving affirmative misrepresentations); *see also United States v. Wilder*, 304 F. Supp. 3d 464, 471 (D. Md. 2018).

Though many of the cases involve misrepresentations as to the nature of the investigation, their logic applies in this case. The video of Mr. Cummings' post-arrest statement reflects that he spoke to investigators only because he believed, based on representations by

Special Agent Rachel Corn's , that he would have to wait weeks or months to find out the nature of the charges against him if he invoked his right to counsel.

The government has included with its response a partial transcript of the conversation that Postal Inspector Nicole Rodriguez and Special Agent Rachel Corn had with Mr. Cummings prior to his custodial interview. Prior to the portion included in the government's response, Inspector Rodriguez tells Mr. Cummings that they executed a search warrant on his home and that they're trying to "clear some things up." The agents then read him a Miranda waiver form. Special Agent Corn begins to explain his rights, and Mr. Cummings immediately expresses interest in obtaining counsel. He asks how long it would take to get counsel and expresses his assumption that it would be "weeks or months" before "you guys will talk to me [about the charges against him]." Though Special Agent Corn is an experienced FBI agent and certainly knew that it would not take months for Mr. Cummings to have counsel appointed, she did not dispel his misconception, instead hesitating, but ultimately confirming that it could take months: "Well that we don't know. **Yeah**. It…I don't know how long it would be. It would be up to probably you and your attorney." Resp. at 11.

In addition, the video and audio recorded interrogation shows that the questioning agents withheld the Advice of Rights form from Mr. Cummings until after they were able to first extract an oral waiver. When they finally provided Mr. Cummings the form to review, he further inquired about the process of waiving his rights. In response, Special Agent Corn directed him to "Just sign."

It is clear that Mr. Cummings would not have waived his right to remain silent if he knew that he would have access to a lawyer that day, and not have to wait "weeks or months." The

advisement and Mr. Cummings' questions demonstrate that his waiver was anything but knowing and voluntary.

### Conclusion

The initial warrant applications in this matter were deficient and their execution violated Mr. Cummings' rights under the Fourth Amendment to the United States Constitution. His custodial statements were obtained pursuant to an involuntary *Miranda* waiver. The evidence obtained from these unlawful practices should be suppressed.

Respectfully submitted,

JAMES WYDA
Federal Public Defender
  for the District of Maryland


_____/s/_____
LAURA GINSBERG ABELSON, #29363
DAVID WALSH-LITTLE, #23586
Assistant Federal Public Defenders
100 South Charles Street
Tower II, 9th Floor
Baltimore, Maryland 21201
Phone: (410) 962-3962
Fax: (410) 962-0872
Email: laura_abelson@fd.org
        david_walsh-little@fd.org